IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

STACY WHITFIELD,                    *

    Plaintiff,                       *

vs.                                 *
                                    CASE NO. 3:13-CV-114 (CDL)
HART COUNTY, GEORGIA,              *

    Defendant.                       *

O R D E R

Plaintiff Stacy Whitfield sporadically took time off work to care for her disabled child, and then her former employer, Defendant Hart County, Georgia, terminated her. She now sues the County for interfering with her rights under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and for terminating her in retaliation for exercising her rights under the Act. She also claims that the County discriminated against her because of her association with her disabled child, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The County seeks summary judgment on all these claims. (ECF No. 12). For the reasons discussed below, the Court denies summary judgment on the FMLA claims and grants summary judgment as to Whitfield's ADA and Rehabilitation Act claims.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Whitfield, the record reveals the following.

Whitfield began working for the Hart County Board of Tax Assessors on March 14, 2011. For the majority of her employment, Whitfield's job duties included, among other things, staffing the front desk and interacting with citizens visiting the office. Because of her regular interactions with citizens, the County expected Whitfield to work when the office was open—8:00 a.m. to 5:00 p.m., Monday through Friday. Employees kept timesheets recording the hours they worked, and if an employee

worked over forty hours a week, they were entitled to overtime pay or compensation time.

Despite these seemingly well-structured work hours, Whitfield alleges that the office was in fact quite relaxed—employees often left the office during the day to run an errand, and at least one employee brought unrelated philanthropic work to the office.  Although employees were required to record their time, employees clocked in and out, according to Whitfield, at the same time every day regardless of when they actually worked.  Thus, Whitfield testifies that the timesheets were a mere formality and had little correlation to the time that employees actually worked.

When Whitfield began working for the County, her son, then six years old, was diagnosed with Asperger's syndrome, a type of autism.  Because of his autism, Whitfield's son suffered from numerous complications, including gastritis, esophagitis, and acid reflux.  To care for her son, Whitfield occasionally came into work late or left in the middle of the day.  To make up for her absences, Whitfield worked late or on the weekends.

Whitfield's irregular work hours began to cause conflict in July 2011, when the County's new Chief Appraiser, Wayne Patrick, became Whitfield's supervisor.  Shortly after this shift in supervisors, in August 2011, Whitfield explained to her new supervisor that her son had Asperger's syndrome and that she

often had to take him to doctor's appointments and special education meetings in the middle of the day.  Whitfield told her supervisor that she needed to leave work occasionally in order to care for her son, promising to make up for the lost time by working nights and weekends.  Her supervisor approved, according to Whitfield, saying, "[F]amily comes first, do what you need to do."   Whitfield Dep. 55:15-16, ECF No. 16.   Whitfield's supervisor did not encourage Whitfield to apply for FMLA leave, ask for documentation of her son's disability, or make any further inquiry into whether she was eligible for FMLA leave. With this agreement, Whitfield continued to sporadically leave work in the middle of the day, come in late, or miss days to care for her disabled child.

This arrangement appeared to work well, as just one month later, in September 2011, Whitfield had a performance review. Her supervisor wrote: "Stacy and I talked about some attendance issues and she has done outstanding ever since."  Patrick Dep. Ex. 8, ECF No. 28-8.

Issues with Whitfield's work schedule arose, however, later that fall.  At a date both parties appear unable to recall (October or November 2011), the supervisor called a meeting with Whitfield and a member of the Board of Assessors.  The nature of this meeting is disputed.  The County claims that the meeting concerned Whitfield's failure to work regular hours.  According

to the County, they discussed "the importance of having somebody [at the front counter] every day between the hours of 8:00 and 5:00," and "the importance of her being there to run the front counter." Patrick Dep. 105:22-25, ECF No. 28.

While Whitfield admits that they discussed her "attendance issues," she has a different recollection of the tone of the meeting. Whitfield claims that her superiors were concerned with her feeling comfortable with her workload. Whitfield Dep. 66:20-68:5. Both parties agree that Whitfield explained that her attendance issues were caused by her son's health complications. In response, the County did not ask for documentation or proof of her child's disability, but instead suggested that she work part-time. Whitfield declined, insisting on working full-time, but on the condition that she could occasionally leave work to care for her disabled son. In response to this request to deviate from regular office hours, Whitfield testified that the County simply "reiterated [that] their most important thing was to keep the work going and get everything finished on time to move on." *Id.* at 67:5-7. Whitfield understood this remark as approval, and she left the meeting believing she had permission to work irregular hours.

Unfortunately, in January 2012 Whitfield's son became increasingly ill. Accordingly, Whitfield took leave more frequently. From the time her son became ill in January, until

her termination in May, Whitfield estimates that she was absent on at least fifteen occasions.  Whitfield believed that this sporadic leave was permissible, based on her prior conversations with her supervisor.  At one point, on March 27-28, 2012, the child became so ill that he was hospitalized for two days.  Like any caring parent, Whitfield stayed with her son, thus missing two days of work.  When that happened, Whitfield called her supervisor and told him that her son was in the hospital for complications resulting from Asperger's syndrome.  Whitfield later requested two days of vacation leave to cover this absence, which the County granted.

In May 2012, Whitfield had an incident at work that appears to have hastened her termination.  Whitfield was tasked with booking a hotel for her supervisor's business trip on May 6-7. Whitfield mistakenly reserved the wrong hotel.  The supervisor initially contacted Whitfield to correct the error, but when he needed additional assistance with the reservation, Whitefield was out of the office.  Since Whitfield was unavailable, the supervisor had one of Whitfield's coworkers resolve the problem instead—apparently an indication of his dissatisfaction with Whitfield.  Shortly after this incident, on May 17, 2012, the Hart County Board of Tax Assessors voted unanimously to terminate Whitfield.  The next day, May 18, Whitfield was terminated for "[f]ailure to comply with request by the Chief

Appraiser and Chairman of the Board of Assessors to work requested normal hours." Separation Notice, ECF No. 18-7. When Whitfield was terminated, she had unused vacation and sick time.

Importantly, Whitfield's supervisor testified that he never doubted that Whitfield was absent to care for her sick son.

DISCUSSION

Whitfield brings four claims against the County: (1) an FMLA interference claim; (2) an FMLA retaliation claim; (3) an ADA associational discrimination claim; and (4) a Rehabilitation Act associational discrimination claim. For the reasons discussed below, the Court denies summary judgment as to the first two claims, and grants summary judgment as to the latter two claims.

## I.  **The Family Medical Leave Act**

The Family Medical Leave Act of 1993 requires an employer to allow an eligible employee to take up to twelve weeks of leave during every twelve-month period to care for a minor child with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). An employee can take this leave on an intermittent basis, as Whitfield did here, meaning "in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202.

"Under section 2615(a) of the FMLA, an employee may bring two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with

his substantive rights under the Act; and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in an activity protected by the Act." *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).  The primary difference between an interference and retaliation claim is the employer's intent.  In an interference claim, the employee merely has to prove that she was entitled to a benefit and that the employer interfered with that benefit.  "[T]he employer's motives are irrelevant." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).  "In contrast, to succeed on a retaliation claim, an employee . . . faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory . . . animus.'"  *Id.* at 1207 (quoting *King v. Preferred Technical Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)).  Whitfield brings claims for both interference and retaliation.

> A.   Interference Claim

Whitfield claims that the County interfered with her right to take intermittent leave to care for her disabled child by discharging her.  The FMLA prohibits an "employer [from] interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  "A Plaintiff claiming

interference must demonstrate by a preponderance of the evidence that she was denied a benefit to which she was entitled." *Pereda*, 666 F.3d at 1274 (internal quotation marks omitted).

To make out a claim for interference, Whitfield must show that (1) she was eligible for FMLA leave; (2) she was entitled to FMLA leave; (3) she gave adequate notice of her need for leave; and (4) the County interfered with her FMLA leave in some way, such as by discharging her. *See Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (requiring an employee to be eligible for FMLA leave); *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (inquiring into whether an employee is entitled to FMLA leave); *see also* 29 C.F.R. § 825.303 (requiring an employee to give notice of leave); 29 U.S.C. § 2615(a)(1) (prohibiting an employer from interfering with an employee's FMLA rights). The County claims that Whitfield fails to meet elements one, two, and three. The Court disagrees.

### 1. Eligibility for FMLA Leave

Although not well-developed in its briefs, the County appears to argue that Whitfield's claim fails because she requested and began taking intermittent leave before becoming an eligible employee under the FMLA. "An eligible employee is an employee who has worked for the employer for twelve months and for at least 1,250 hours in the preceding year." *Walker v.*

*Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1249 (11th Cir. 2004) (citing 29 U.S.C. § 2611).

In general, the FMLA "protects employees and prospective employees even if the individual is not currently eligible or entitled to leave." *Pereda*, 666 F.3d at 1276. But when an ineligible employee requests leave to begin *before* the employee becomes eligible under the FMLA, the Act does not protect the employee: "There can be no doubt that the request-made by an ineligible employee for leave that would begin when she would still have been ineligible-is not protected by the FMLA." *Walker*, 379 F.3d at 1253.

The County argues that Whitfield is not an "eligible" employee under the FMLA because she first requested leave in August 2011, far before she became eligible on March 14, 2012. But this analysis overlooks the fact that Whitfield requested leave both *before* and *after* becoming FMLA eligible. Whitfield initially requested leave before coming eligible—in August and November of 2011. She renewed her request, however, after becoming an eligible employee: On March 27, 2012, Whitfield called her supervisor and explained that she was out of the office because her son was in the hospital for Asperger's-related complications.

Additionally, although Whitfield began taking intermittent leave while ineligible for FMLA leave, she continued to take

10

leave once she became an eligible employee.   Nothing in the record indicates that the County disapproved of her continuing to take intermittent leave after becoming eligible.   For these reasons, the Court concludes that there is sufficient evidence from which a jury could conclude that Whitfield renewed her request for leave after she became eligible.   Therefore, Whitfield has created a genuine factual dispute as to her eligibility for FMLA leave.

### 2.   *Entitled to FMLA Leave*

The County argues that Whitfield's claim fails because she was not entitled to FMLA leave.   This is so because Whitfield had not exhausted all of her paid leave.   The Court declines to grant summary judgment because the County's policy does not require exhaustion of all paid leave, and even if it did, such a policy violates the FMLA.

As an initial matter, the County's FMLA policy did not require Whitfield to exhaust all paid leave before taking FMLA leave.   The policy permits an employee to take FMLA leave *concurrently* with paid vacation or sick leave: "The county requires the employee to use accrued paid leave first *while taking family and medical leave* to receive pay for all or a portion of leave."   Employee Handbook 24-25, ECF No. 18-3 (emphasis added).   Thus, it is clear from the County's own

11

policy that Whitfield was not required to exhaust all paid leave before taking FMLA leave.

In the alternative, even assuming that the County did require exhaustion of paid leave, such a policy would violate the FMLA:

> Neither Congress nor the Department of Labor could have intended, by using the substitution language, to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

*Strickland*, 239 F.3d at 1205 (footnote omitted). Thus, the Court concludes that Whitfield presents sufficient facts to raise a genuine dispute as to whether she is entitled to FMLA leave.

### 3. Notice of Need for Leave

Next, the County argues that it is entitled to summary judgment because Whitfield failed to give adequate notice of her need to take FMLA-qualifying leave. An employee must give notice of her intent to take FMLA-qualifying leave, but the requirements for notice vary depending on whether the need for leave was "foreseeable" or "unforeseeable." *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1434 (11th Cir. 1997). When the need for leave is unforeseeable, as it was here, "the employee need only

provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason." *Id.* at 1436.[1]

The Code of Federal Regulations provides that an employee need only give notice *once* for the entire span of the intermittent leave. 29 C.F.R. § 825.302(a). The notice does not have to be in writing. In fact, the employee does not even have to mention the FMLA. 29 C.F.R. § 825.303(b). "[T]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Gay*, 125 F.3d at 1435 (internal quotation marks omitted). Once the employee does so, the burden shifts to the employer to inquire further into whether the leave implicates the FMLA. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002); *see also* 29 C.F.R. § 825.302(c) ("In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is

---

[1]   The County argues that Whitfield's need for leave was foreseeable, to the extent that it was for scheduled appointments with doctors and special education teachers. But the record reflects that Whitfield's leave covered a wider variety of childcare needs, including when her son had unanticipated behavioral problems related to autism and when her son was hospitalized for an illness. Since Whitfield could not predict the behavioral outbursts or the illness that required hospitalization, the Court treats Whitfield's leave as unforeseeable for purposes of notice.

being sought by the employee, and obtain the necessary details of the leave to be taken.").

The County argues that Whitfield failed to give adequate notice of her need for leave because she did not: (1) provide the County with documentation of her son's health condition, (2) provide notice in writing, or (3) inform the County of the anticipated time and duration of her leave.

In response, Whitfield points to at least three occasions where she provided the County with notice of her need for leave. First, in August 2011 Whitfield explained to her supervisor that her son had Asperger's syndrome, and that she occasionally had to work irregular hours in order to care for him. Second, in October or November 2011, the County confronted Whitfield on her attendance issues and she explained that she had been absent from work to care for her disabled child. At that time, Whitfield explained that she needed to leave work occasionally to care for her son. Finally, in March 2012, Whitfield told her supervisor that she needed to take leave because her son was in the hospital due to gastritis, an "issue[] . . . very common with Asperger's." Whitfield Dep. 57:19-20. On each occasion, the County made no request that Whitfield provide documentation of her son's disability, but instead approved the request to work irregular hours.

14

The Court concludes that Whitfield meets the threshold requirements for notice set forth in the FMLA, leaving the issue of whether Whitfield adequately apprised the County of her need for such leave to a jury. On at least three occasions, Whitfield verbally notified the County of her need for leave by stating that she needed to deviate from regular working hours to care for her disabled child. This was enough to satisfy her obligation under the FMLA. *See Cruz v. Publix Super Markets Inc.*, 428 F.3d 1379, 1384 (11th Cir. 2005) (discussing *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998)) (recognizing that an employee would adequately convey notice of his need for FMLA leave if the employee simply stated that he needed to take leave to care for a child with HIV). Once Whitfield did so, the burden was on the County to inquire further into whether her situation called for FMLA leave. *Ragsdale*, 535 U.S. at 87. Although the County's FMLA policy requires an employee to provide documentation of her health condition, Whitfield alleges that the County never provided her with a copy of this policy. Further, it is undisputed that the County never asked for documentation in any of its conversations with Whitfield.

Although Whitfield did not indicate the exact duration or amount of leave she would need, she did ask for permission to leave work to take her son to doctor's appointments, special

education meetings, and other appointments.  From these facts, a reasonable juror could conclude that Whitfield gave the County sufficient notice that she would take sporadic, unpredictable, leave at her own discretion, and that the County approved of this flexible leave.[2]  Concluding that there is at least a genuine dispute of material fact as to whether Whitfield gave proper notice, the Court denies summary judgment as to Whitfield's interference claim.

B.   Retaliation Claim

In addition to contending that the County interfered with her rights under the FMLA, Whitfield also argues that her termination constitutes retaliation.  An employee can use either direct or circumstantial evidence to show retaliatory discharge. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (discussing gender discrimination claims under Tile VII). Whitfield argues both.  The Court finds insufficient direct evidence, but agrees that Whitfield has enough circumstantial evidence to raise a genuine dispute as to whether her discharge was retaliation for asserting her rights under the FMLA.

---

[2] As an alternative argument, the County contends that Whitfield's interference claim fails because Whitfield did not suffer any monetary loss.  But Whitfield alleges that the County interfered with her ability to take FMLA leave by terminating her.  As a result of her termination, Whitfield alleges that she suffered monetary loss in the form of lost wages and employment benefits.

### 1.   Direct Evidence of Retaliation

"Direct" evidence is evidence that does not require the fact-finder to make any inferences, and thus, is reserved to "'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor." *Id.* at 1086 (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.*

Whitfield argues that the following constitutes direct evidence: Whitfield's separation notice provides that the County terminated her for failing to work regular hours, and her supervisor testified that he had no doubt that the reason Whitfield deviated from regular office hours was to care for her disabled son. This evidence, though strongly suggesting discrimination, still requires an inference. Thus, Whitfield has not presented direct evidence of retaliation.

### 2.   Circumstantial Evidence of Retaliation

"[I]n the absence of direct evidence of the employer's intent," courts evaluating FMLA retaliation claims "apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for evaluating Title VII discrimination claims." *Strickland*, 239 F.3d at 1207. First, the plaintiff must establish a prima facie

case of retaliation. *Walker*, 379 F.3d at 1252. If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for discharge. *Id*. If the employer provides a non-retaliatory reason, then the burden shifts back to the employee to point to sufficient evidence to create a genuine factual dispute as to whether the employer's purported reason is a pretext for discrimination. *Id.*

> a.   PRIMA FACIE CASE OF REALIATION

To establish a prima facie case of retaliation under the FMLA, "an employee must allege that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Id*. The County does not dispute that Whitfield suffered an adverse employment action. It does argue, however, that her prima facie case fails because she did not engage in statutorily protected activity and the decision to terminate her was not causally connected to that activity.

Whitfield argues that the leave she took after becoming an eligible employee in March 2012, through her termination in May, constitutes statutorily protected activity. In response, the County merely reiterates its previous arguments—that Whitfield was not an eligible employee, that she did not give adequate notice, and that she failed to exhaust all paid leave. For the

reasons discussed above, the Court considers these arguments inadequate grounds for granting summary judgment. Thus, the Court concludes that there is at least a genuine factual dispute as to whether Whitfield engaged in protected activity.

Additionally, the County argues that its decision to terminate Whitfield could not have been related to her request for FMLA leave because her supervisor testified that he had very little knowledge of the FMLA and had no prior experience with an employee requesting FMLA leave. Further, the County contends that it terminated Whitfield—not for taking leave—but for mishandling her supervisor's hotel reservation. In response, Whitfield points to the close temporal proximity of her leave and the County's decision to terminate her. Additionally, Whitfield emphasizes that her separation notice clearly states that the County terminated her for failure to work regular hours. The Court concludes that a reasonable juror could find that Whitfield's termination was causally connected to her request for leave.

In sum, the Court concludes that Whitfield has established a prima facie case of retaliatory discharge.

b.   NON-RETALIATORY REASON FOR DISCHARGE

If an employee makes out a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for discharge. *Walker*, 379

19

F.3d 1252.   The County submits two allegedly non-retaliatory reasons.   First, it contends that Whitfield was terminated for failure to work regular hours.   Second, the County alleges that it terminated Whitfield because of her mishandling of the hotel reservation.   Thus, the County has met its burden of articulating a legitimate, non-retaliatory reason for discharging Whitfield.

### c.   PRETEXT FOR RETALIATION

Because the County articulated non-retaliatory reasons for its decision, the burden shifts back to Whitfield to demonstrate that the proffered reasons are a pretext for retaliation.   *Id*. Whitfield concedes that she reserved the wrong hotel for her supervisor.   But she insists that the real reason for her termination—and the reason stated on her separation notice—was that she did not work regular hours, presumably because of the leave she took to care for her disabled son.   Whitfield further contends that the Court should infer pretext from a variety of factors—including the fact that Whitfield's supervisor testified to the Department of Labor that he gave Whitfield three verbal warnings about her attendance; though she contends she received none.   The Court concludes that Whitfield has created a jury question as to whether the County's purported non-retaliatory reason is a pretext for retaliation.   Therefore, the Court denies summary judgment.

## II.  The Americans with Disabilities Act and Rehabilitation Act

Whitfield contends that the County discriminated against her because of her association with her disabled son.  Whitfield brings this claim under the "association discrimination" provision of the ADA, which makes it unlawful for an employer to "exclud[e] or otherwise deny[] equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).  Although § 504 of the Rehabilitation Act does not contain a comparable provision, other courts have recognized that an employee can sue under the Rehabilitation Act when her employer discriminates against her due to her association with a disabled person.  *See, e.g., Young v. McCarthy-Bush Corp.,* Civil Action No. 1:12-CV-3623-RWS, 2014 WL 1224459, at *10 (N.D. Ga. Mar. 24, 2014); *see also MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 334 (6th Cir. 2002) (indicating that the Rehabilitation Act provides relief to a plaintiff that alleges discrimination based on their association with a disabled person).  "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases."  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).  Because the same standard governs both claims, the Court analyzes them together.

Unless there is direct evidence of discrimination, we analyze associational discrimination claims using the familiar *McDonnell Douglas* burden-shifting framework. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). To establish a prima facie case of associational discrimination, a plaintiff must present evidence that (1) she suffered an adverse employment action; (2) she was qualified for the job; (3) her employer knew that she had a relative with a disability; and (4) "the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in [the employer's] decision." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (alterations in original). "[I]f the plaintiff successfully demonstrates a *prima facie* case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason." *Brooks v. Cnty. Comm'r of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). If the employer provides a nondiscriminatory reason, the burden of production shifts back to the employee to demonstrate that the alleged nondiscriminatory reason is a pretext for discrimination. *Id.*

The County argues that Whitfield's prima facie case fails because she was not qualified for the job. "Qualified" means that "she, with or without reasonable accommodation, can perform

the essential functions and job requirements of the position [she] holds." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam).  Although the ADA requires employers to provide disabled employees with reasonable accommodations, the ADA does not require an employer to provide reasonable accommodations to an employee that associates with a disabled relative.  Thus, an employee is not "qualified" if she fails to meet the attendance requirements of her job—even when the employee is absent to care for a disabled child, and when the employer grants the employee's request for leave. *See Hilburn*, 181 F.3d at 1231; *Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 214 (4th Cir. 1994) (finding that an employee who frequently missed work was not a "qualified individual with a disability").  "[A]n employer [does not] violate[] the ADA by discharging an employee who was frequently absent from work due to her disability and that of a family member." *Hilburn*, 181 F.3d at 1231; *accord Den Hartog v. Wasaton Acad.*, 129 F.3d 1076, 1083 (10th Cir. 1997) ("If a non-disabled employee violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for the disabled associate.").

In response, Whitfield asserts that the County did not have an attendance "policy" because it did not require employees to

keep accurate time records, and it routinely allowed employees to leave work to run short errands and do other tasks.

The Court concludes that the facts viewed in the light most favorable to Whitfield reveal that she was unqualified for her job for purposes of her ADA and Rehabilitation Act claims because she failed to meet the attendance requirement of her job. The County had an attendance policy, as shown by Whitfield's consistent testimony that she understood that she was expected to work from 8:00 a.m. to 5:00 p.m. Further, working regular office hours was important to the nature of her job, since she regularly interacted with citizens that visited the office. Indeed, for a substantial portion of Whitfield's employment with the County, her desk was behind the front counter, and it was important that either Whitfield or her colleague be at the front desk. Accordingly, Whitfield fails to establish a prima facie case of discrimination, and the County is entitled to summary judgment on Whitfield's associational discrimination claim.

## CONCLUSION

In sum, the Court denies summary judgment as to the FMLA claims for interference and retaliation. But the Court grants the County's motion for summary judgment as to the associational discrimination claims under the ADA and Rehabilitation Act.

IT IS SO ORDERED, this 3rd day of April, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA